UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISMAHAN ADAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>SWEDISH HEALTH SERVICES, doing business as SWEDISH MEDICAL GROUP,<br><br>Defendant. | CASE NO. 2:23-cv-01266-TL<br><br>ORDER ON MOTION TO DISMISS AND MOTION FOR SANCTIONS |

This matter is before the Court on Defendant Swedish Health Services's Motions to Dismiss under FRCP 12(b)(1) or, in the alternative, to Strike Collective and Class Claims Under FRCP 12(f) (Dkt. No. 24), and for Sanctions under FRCP 11(c) (Dkt. No. 33). Having considered the Parties' briefing, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court DENIES the motions.

ORDER ON MOTION TO DISMISS AND MOTION FOR SANCTIONS - 1

# I. BACKGROUND

## A. Factual Background

The facts alleged in Plaintiff's Class Action Complaint, which the Court takes as true for the purposes of this Order, are as follows: Plaintiff Ismahan Adan is a citizen of Washington State and a former employee of Defendant Swedish Health Services. Dkt. No. 1 ¶ 13. Defendant Swedish Healthcare Services ("Swedish") is a nonprofit healthcare organization headquartered in Seattle, Washington. *Id.* ¶ 16.

Defendant owns and operates several medical campuses in the Seattle area under the Swedish Medical Group name, including campuses in First Hill, Cherry Hill, Ballard, Issaquah, Edmonds, Mill Creek, and Redmond. *Id.* ¶ 17. Plaintiff was employed as a medical assistant at various Swedish campuses in Seattle from approximately April to August 2021. *Id.* ¶ 32. During her period of employment with Swedish, Plaintiff was a non-exempt hourly worker. *Id.* As a medical assistant, Plaintiff's responsibilities included "providing patient care and monitoring, interacting with other hospital employees and visitors, monitoring blood-work and patient test results, setting up patients for minor procedures, disposing of medical waste, and documenting procedures." *Id.*

During Plaintiff's period of employment with Swedish, she "routinely performed work off-the-clock, was subject to interruptions during attempted meal and rest breaks, and in fact was interrupted or denied meal and rest breaks on a regular basis." *Id.* She was not compensated for the work performed during these meal and rest breaks. *Id.* During her employment with Swedish, Plaintiff "worked more than forty hours in at least one workweek," with an average of 9–10 hours per shift and between four and five shifts per week. *Id.* ¶ 40. But because Defendant did not include time worked off the clock before and after shifts or during meal and rest periods in

1  Plaintiff's total hours worked in a given workweek, Defendant did not compensate Plaintiff at
2  one and one-half times her regular hourly rate for all overtime hours worked. *Id.* ¶ 43.
3       Plaintiff alleges that this experience is consistent with other employees' experiences at
4  Swedish. *Id.* ¶ 38. "Upon information and belief, Plaintiff is aware that [other hourly, non-
5  exempt employees] were and are required to work additional time outside of their scheduled
6  shifts to keep up with the demands of the job." *Id.* Specifically, Plaintiff alleges that hourly, non-
7  exempt employees were required to perform such tasks as restocking supplies, preparing and
8  organizing equipment, monitoring patients, assisting other hospital staff, charting, and sanitizing
9  equipment, among other various tasks, while off the clock, and were not compensated for this
10 time worked. *Id.*

11 **B.   Procedural History**

12      Plaintiff first brought this case against Swedish and Providence Health & Services in
13 January 2022. *See Adan v. Swedish Health Services* ("*Adan I*"), No. C22-0078, Dkt. No. 1 (W.D.
14 Wash. Jan 26, 2022). Plaintiff alleged that she and other employees were the victims of
15 Swedish's policy and practice of "automatically deducting time from their recorded hours
16 worked for meal periods." *Id.* ¶ 1. Providence Health & Services was dismissed from *Adan I* in
17 January 2023.
18      Following over eight months of discovery in *Adan I*, during which Swedish produced
19 documents and deposed Plaintiff, *see Adan I*, Dkt. No. 43 at 3 (Mar. 23, 2023), Swedish filed a
20 motion to dismiss on the grounds that Plaintiff lacked standing to bring her individual and class
21 and collective claims, *id.*, Dkt. No. 37 at 5 (Feb. 23, 2023). Swedish argued that Plaintiff had
22 never been "subject to any policy or practice of automatically deducting time for meal periods
23 and received rest breaks," citing to her deposition testimony and documents produced in
24

discovery showing that a previous policy of automatically deducting a meal period had been discontinued before Plaintiff's employment with Swedish. *Id.* at 6–10.

Plaintiff failed to respond to Swedish's motion to dismiss because her counsel mis-calendared the due date for the opposition brief, and her case was dismissed without prejudice in March 2023. *Id.*, Dkt. No. 39 (Mar. 17, 2023). Plaintiff's motion for reconsideration of the dismissal was denied. *Id.*, Dkt. No. 44 (Mar. 23, 2023). Plaintiff appealed that decision but eventually stipulated to dismissal of the appeal. *Id.*, Dkt. Nos. 46, 49 (Apr. 18 & Aug. 30, 2023).

Plaintiff filed the instant action in August 2023. Dkt. No. 1. The Complaint is largely identical to the original *Adan I* complaint but omits allegations about "automatic" deductions of time from Plaintiff and other employees' recorded hours. *Compare* Dkt. No. 1 ¶ 1, *with* Dkt. No. 34 at 6.

## II. MOTION TO DISMISS

### A. Legal Standard

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss may be brought where subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of subject matter jurisdiction may be either a facial attack (challenging the sufficiency of the pleadings) or a factual attack (presenting evidence contesting the truth of the allegations in the pleadings). *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "When reviewing a [facial] dismissal pursuant to Rule 12(b)(1) . . . , 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States,* 859

F.3d 1152, 1156–57 (9th Cir. 2017)). However, "[i]f the moving party converts the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Wolfe*, 392 F.3d at 362 (quotation and citation omitted). When addressing a factual attack, a court may consider evidence outside of the complaint without converting the motion to dismiss into a motion for summary judgment. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Where—as here—the factual issues related to jurisdiction also go to the merits, the court "should employ the standard applicable to a motion for summary judgment," under which the moving party prevails "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Southard v. Ballard Marine Constr., Inc.*, 458 F. Supp. 3d 1298, 1302–03 (W.D. Wash. 2020) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

**B.    Discussion**

Defendant argues that Plaintiff lacks standing under Federal Rule of Civil Procedure 12(b)(1) because she has suffered no injury. Dkt. No. 24 at 15. Defendant points to Plaintiff's deposition testimony and documents produced in discovery to show that Plaintiff "has not suffered any actual injury connected to the complained-of conduct." Dkt. No. 24 at 16.

To establish Article III standing, "a plaintiff must show that (1) he or she has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and conduct complained of; and (3) it is likely that a favorable decision in the case will redress the injury." *Mansor v. U.S. Citizenship and Immigr. Servs.*, 685 F. Supp. 3d 1000, 1008 (W.D. Wash. 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–

61 (1992)). Defendant only argues that Plaintiff has not suffered an injury in fact and does not address either causation or redressability. *See* Dkt. No. 24 at 15–17.

Plaintiff's allegations are centered on Defendant's alleged practice of requiring employees to clock out for meal periods or the end of their shifts but continue to work unpaid. *See generally* Dkt. No. 1. The evidence offered by Plaintiff in her opposition to the motion, as well as the evidence offered by Defendant, is sufficient to establish that Plaintiff has suffered a concrete and particularized injury in fact for purposes of establishing standing for these claims.

Plaintiff's testimony indicates that on at least three to four occasions, she was instructed by her supervisor to perform work after clocking out:

> **Q**     Okay. And in terms of—you said that *Rachel instructed you that you needed to get your work done after you had clocked out*. Is that your testimony?
>
> **A**     Yes.
>
> **Q**     How many times did Rachel tell you that?
>
> **A**     Three to four times.
>
> **Q**     Okay. And she told you that you should work—or continue working even after you've clocked out. That's your testimony?
>
> **A**     Yes.

Dkt. No. 29 at 9 (emphasis added);[1] Dkt. No. 37-1 at 7. Defendant argues that "[t]o the extent Plaintiff suggests that she worked 'off-the-clock,' any such assertion is incorrectly premised on the assumption that time was manually edited for meal breaks during which she may have worked." Dkt. No. 24 at 16. However, Plaintiff's testimony makes clear that, separate from any

---

[1] In her Opposition to Defendant's Motion, Plaintiff cites to deposition excerpts "attached to the Declaration of Andrew Weaver . . . as Exhibit A" (Dkt. No. 29 at 9), but did not file any such declaration in support of her Opposition. However, the Declaration of Andrew Weaver in Support of Plaintiff's Opposition to Defendant's Motion for Sanctions Under FRCP 11(C) (Dkt. No. 37) includes the relevant deposition excerpts. *See* Dkt. No. 37-1 at 3, 7. As the relevant deposition excerpts are in the record, the Court will consider them here.

ORDER ON MOTION TO DISMISS AND MOTION FOR SANCTIONS - 6

allegations about manual editing of her time, she was at times instructed by her supervisor to work after clocking out on the Kronos system. *See, e.g.*, Dkt. No. 25 at 43 ("Rachel told me that I have to clock out of work for my – for my lunch and rest – lunch and dinner breaks, the meal break, and I – even if I clock out I can continue working."); Dkt. No. 29 at 9; Dkt. No. 37-1 at 3 ("[S]o when we even clocked out, we—we would have the providers asking us to discharge patients, we would fax over or call for the medical information to be sent over for the patient, for new patients, and . . . I would have to go and find [charts] . . . and we would look through it and I would miss my—my lunch break just to go look for it.").[2] Plaintiff also testified that she was not paid for that work. Dkt. No. 37-1 at 10. This establishes that Plaintiff has performed off-the-clock work for which she was not paid—an actual injury in fact which is concrete and particularized, as required to achieve standing.

Plaintiff also makes allegations connected to Defendant's "policy and practice of deducting time from [employees'] recorded hours worked." Dkt. No. 1 ¶ 1. Plaintiff testified that her supervisor "would punch in our hours that we took a break even though we didn't take a break" (Dkt. No. 37-1 at 4; *see also* Dkt. No. 37-1 at 10), which is sufficient to establish injury related to the deduction of time from her hours worked. Defendant contends that Plaintiff "admitted" that she was "*never* subject to any policy or practice of manually editing time for meal periods not taken" (Dkt. No. 24 at 16), but Plaintiff's testimony only confirms that she was never subject to a policy or practice of *automatically* deducting time for meal periods (*id.* at 12).

Plaintiff has clearly alleged that she was injured by a practice of her employer that required her to work during meal or rest breaks without pay. That Plaintiff does not point to a specific written policy by Defendant is of no consequence to Plaintiff's Article III standing; she

---

[2] For purposes of this motion, this testimony also defeats Defendant's assertion that "Plaintiff testified that she took all legally compliant rest breaks" (Dkt. No. 24 at 16), a fact for which Defendant provided no citation to the record.

ORDER ON MOTION TO DISMISS AND MOTION FOR SANCTIONS - 7

1  has testified to a concrete injury in fact—being instructed by her supervisor to perform, and
2  performing, unpaid work off-the-clock—that confers standing under Article III.
3  Defendant's motion to dismiss Plaintiff's complaint for lack of Article III standing is
4  therefore DENIED.

### III.   MOTION TO STRIKE

#### A.   Legal Standard

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In deciding a Rule 12(f) motion to strike, a court should not resolve disputed and substantial factual or legal issues. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–75 (9th Cir. 2010) ("We . . . hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Id.* at 973 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Rule 12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits. *E.g., Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018) (citations and internal quotation marks omitted).

This is especially true of motions to strike class action allegations, as "the shape and form of a class action evolves only through the process of discovery." *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020 WL 4729176, at *2 (W.D. Wash. Mar. 27, 2020) (citations omitted); *see also Dorian v. Amazon Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at *2 n.1 (W.D. Wash. Aug. 8, 2022) (refusing to consider "premature" request to strike class allegations at the motion to dismiss stage).

**B.      Discussion**

Defendant argues that, if the Court determines that Plaintiff does have standing, her collective and class claims must be stricken. Dkt. No. 24 at 17. Defendant contends that "[t]he entire premise of Plaintiff's collective and class actions—to represent 'similarly situated' individuals who were allegedly subject to 'Swedish's policy and practice of deducting time from their recorded hours worked for meal periods' and missed rest breaks"—cannot be maintained given Plaintiff's deposition testimony that "she was never subject to any such policy or practice." Dkt. No. 24 at 17–18.

Courts have observed that "dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *Hoffman*, 2020 WL 4729176, at *2 (quoting *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007)). "In the context of a motion to *strike* class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is *not* certifiable." *Wysocki v. Zoom Techs. Inc.*, No. C22-5453, 2024 WL 1139094, at *4 (W.D. Wash. Mar. 15, 2024) (emphasis in original) (quoting *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1340–41 (D. Or. 2013)).

Defendant first argues that the collective and class fail to meet the commonality prong of Rule 23(a)(2) because Plaintiff does not share a common contention with the class. Dkt. No. 24 at 18. Rule 23 allows one or more plaintiffs to sue as representative parties on behalf of all class members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Plaintiff

worked for Defendant for a period of approximately four months in 2021. Dkt. No. 1 ¶ 32. Plaintiff testified that, on several occasions during that time, she worked off the clock (either before or after her shift, or during her designated meal or rest breaks) at the direction of her supervisor. *See, e.g.*, Dkt. No. 29 at 9; Dkt. No. 25 at 43. Plaintiff also testified that her supervisor "would punch in *our* hours that *we* took a break even though *we* didn't take a break" and that "she put in that *we* took a meal break but *we* didn't." Dkt. No. 37-1 at 4 (emphasis added). She further stated that her coworkers "stopped taking their break[s] because [of the] shortage of staff. There w[ere] days that they could not take their breaks." *Id.* at 9. At this early stage of litigation, and prior to class discovery, this testimony is sufficient to support Plaintiff's allegations that she shares common questions of law or fact with other employees who were subject to Defendant's alleged practice of requiring employees to perform work for which they were unpaid.

Defendant also argues that Plaintiff is not an adequate representative of the collective or class. Dkt. No. 24 at 18. To determine adequacy under the fourth prong, courts resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Anders v. Calif. State Univ., Fresno*, No. C23-15265, 2024 WL 177332, at *1 (9th Cir. Jan. 17, 2024) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Defendant does not argue that Plaintiff or her counsel has any conflicts of interest with other collective or class members, or that Plaintiff or her counsel cannot prosecute the action vigorously on behalf of the class. Defendant has not shown that Plaintiff is not an adequate collective or class representative.

Finally, Defendant argues that "[t]o the extent Plaintiff intends to take the position that employees' individual supervisors, like her own, somehow 'edited' their time to account for

meal breaks that were not taken, her argument would turn on a highly individualized factual inquiry . . . ." Dkt. No. 24 at 18. The evidence presented at this stage focuses on Plaintiff's manager, but even if the claim only involves the practices of this one manager, it is possible that the manager supervised enough employees to meet the numerosity requirement of Rule 23. At this juncture, Defendant must show that there is *no* theory under which the collective or class is certifiable; it is not enough to show that one possible theory of the case is untenable. *Wysocki*, 2024 WL 1139094, at *4. And here, Plaintiff's Complaint is not written as narrowly as Defendant portrays it. For example, Plaintiff alleges that "[she] has actual knowledge that Collective members have been denied compensation for time worked, including meal periods worked or interrupted and 'off-the- clock' work" and "actual knowledge that Collective members have also been denied overtime pay for this work." *Id.* ¶ 54. Plaintiff further alleges that "Defendant has a payroll policy and practice of not compensating hourly-paid caregivers for work performed during their meal periods."[3] Dkt. No. 1 ¶ 29. The Court accepts these facts—which have been made by counsel as officers of the Court after investigation and with the benefit of discovery in *Adan I*—as true for purposes of a motion to dismiss. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Given these allegations, this issue is best left for determination upon a motion for class certification.

For the foregoing reasons, Defendant's motion to strike the collective and class allegations is DENIED.

### IV.  IMPOSITION OF SANCTIONS

---

[3] The Court also notes that this assertion is not made "upon information and belief."

### A. Legal Standard

A court may impose sanctions on a party or its counsel by three primary means: (1) Federal Rule of Civil Procedure 11, which applies to signed, written filings; (2) 28 U.S.C. § 1927, which penalizes unreasonable and vexatious multiplicity of proceedings; and (3) the inherent power of the court. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

Federal Rule of Civil Procedure 11 allows a court to sanction "an attorney, law firm, or party that presents a filing for an improper purpose, asserts frivolous legal arguments, makes factual representations without evidentiary support, or unreasonably denies factual contentions." *Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 673 F. Supp. 3d 1169, 1175 (W.D. Wash. 2023). Where, as here, "the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).

### B. Discussion

Defendant argues that Plaintiff's counsel failed to make a reasonable inquiry prior to filing the instant Complaint that Plaintiff was subject to "a payroll policy and practice of . . . edit[ing] time records to reflect meal periods when meal periods were not taken." Dkt. No. 33 at 9. Defendant contends that Plaintiff was not subject to such a policy, that prior to filing the instant Complaint, she and her counsel knew that she was not subject to such a policy, and that Plaintiff's counsel was privy to responsive employment and payroll policies which show that no such policy or practice exists. *Id.*

But as the Court has already noted, the lack of a specific written policy of time deduction does not mean that no such practice existed, and Plaintiff has testified that she was subject to

manual time entry by her supervisor that did not reflect the entirety of the time she performed work for Defendant. *See supra* § III.B; *see also* Dkt. No. 37-1 at 4 (testifying that Ms. Adan's supervisor "put in that we took a meal break but we didn't"). Because Plaintiff does have a colorable basis for her claims that she was denied payment for all hours worked, her complaint is not factually baseless from an objective perspective. Additionally, Plaintiff testified that her manager recorded lunch breaks that she and her coworkers did not take and that her coworkers did not, in fact, take all mandatory meal and rest breaks, giving rise to her class claims. *See* Dkt. No. 37-1 at 4, 9. While Plaintiff's allegations ultimately may not be meritorious or sufficient to obtain class certification, they are not frivolous.

That is not to say that Plaintiff is without fault in her prosecution of this case. Despite Plaintiff having the benefit of eight months of discovery from Defendant and over two years of additional time to investigate her allegations, the *Adan II* complaint is largely identical to the *Adan I* complaint and not a single additional plaintiff was included to support the class claims. While Plaintiff's claims only just survive the motion to dismiss stage, Plaintiff will need to provide considerably more evidence than she has to this point in order to certify a class or survive later stages of dispositive briefing.

Further, Plaintiff's counsel has now missed multiple deadlines in their prosecution of this case. The Court would expect that the dismissal of the *Adan I* action for missing a briefing deadline—clearly a serious sanction—would have made abundantly clear to Plaintiff's counsel that calendaring errors are not indicative of the "vigorous prosecution" necessary for appointment of Plaintiff and her counsel as an adequate representative of any possible collective or class. Yet Plaintiff's counsel again missed a deadline in opposing Defendant's motion for sanctions. *See* Dkt. Nos. 36, 38. Further missed deadlines by Plaintiff or her counsel may result in the striking of any late-filed briefs or the imposition of other sanctions.

For the foregoing reasons, Defendant's motion for sanctions is DENIED.

## V. CONCLUSION

Accordingly, Defendant's Motions to Dismiss under FRCP 12(b)(1) or, in the alternative, to Strike Collective and Class Claims Under FRCP 12(f) (Dkt. No. 24) is DENIED. Defendant's Motion for Sanctions under FRCP 11(c) (Dkt. No. 33) is DENIED.

Dated this 23rd day of May 2024.

Tana Lin
United States District Judge